GREEN VS UNITED STATES.

Opinion delivered Sept. 26, 1907.

(104 S. W. Rep. 1159).

1. *Criminal Law—Error—Evidence.*

It is harmless to refuse to allow a matter to be shown by one witness, when subsequently the same matter is brought out by the undisputed testimony of another witness.

2. *Same—Instructions.*

It is not error to refuse instructions, whose substance is contained in the general instructions.

3. *Homicide—Instructions.*

An instruction defining murder, first explaining malice aforethought

then stating that evidence must show that defendant thought of killing beforehand, in order to constitute murder is not objectionable if an instruction is then given on the right of self-defense.

4. *Same—Criminal Law.*

Where the instructions considered as a whole, state the law correctly, error may not be claimed on a detached sentence, which taken by itself would be erroneous.

Appeal from the United States Court for the Central District of the Indian Territory; before Justice T. C. Humphry, Nov. 1, 1904.

G. W. Green appeals from a conviction of murder. Affirmed.

The appellant indicted for murder by shooting and killing one Martin Liston on July 14, 1903, within the Central district of Indian Territory, and on October 18 1904, was tried in the United States District Court at Atoka, Ind. Ter., and on October 20, 1904, was found guilty of murder without capital punishment. On October 22, 1904, defendant filed a motion for new trial, which was overruled. On November 1, 1904, defendant was sentenced to imprisonment for life. The case stands in this court on appeal.

*Williams & Utterback, J. G. Ralls,* and *Henry M. Furman,* for appellant.

*J. H. Wilkins* and *Frank Lee,* for the United States.

GILL, C. J. The evidence in the case shows substantially that the defendant and the deceased were neighbors; that the women of their families had had some difficulty, and that defendant and deceased met at a water tank used by both; that a difficulty arose between them, the evidence on the part of the government showing that the deceased was unarmed, except by a small pocketknife which was found in his pocket unopened immediately after the killing, and that he was without any other weapon; that at the time he was shot he was retreating from the defendant, trying to avoid him; and that the defendant

fired upon him several times, two of the balls from the pistol used by the defendant striking the deceased, one of which caused the death of the deceased. The evidence on the part of the defendant was to the effect that the deceased and defendant came together at the tank, and defendant began talking to the deceased with reference to the difficulty between their families; that the deceased put his hand in his pocket, and, using opprobrious language, advanced towards the defendant, who thereupon, and while the deceased was some feet away from him, began shooting at him; that after firing several shots the defendant turned to go away, whereupon the deceased sought to follow him up, at the same time cursing him and telling him he would kill him; that the defendant, looking over his shoulder, believed that the deceased had a pistol, whereupon he reopened firing again in order to protect himself from harm at the hands of the deceased, and shot him and killed him, and that the shot which killed the deceased was fired in defendant's necessary self-defense.

The defendant, upon cross-examination of Mrs. Lettie Liston, wife of deceased, a government witness, offered to show evidence of the difficulty between Mrs. Liston, wife of the deceased, and Mrs. Mahoney, daughter of the defendant, and that Mrs. Liston, wife of deceased, had told Mrs. Green, wife of defendant, that the deceased had said, "If Mrs. Mahoney ever interfered with her [Mrs. Liston] again that Mr. Liston told her [Mrs. Liston] if she didn't whip Mrs. Mahoney that he [Liston] would whip his wife, and that he would attend to the men"—which evidence was excluded by the court, but afterwards this testimony was admitted upon the evidence of Mrs. Lida Mahoney, daughter of defendant, testifying on his behalf, as follows: "Q. Now I will ask you to state whether or not Mrs. Liston had ever made any statement to you about what Mr. Liston said he was going to do to your husband and father, and then I want you to tell about it? A. Yes, sir; she did.

She come down to my house— (Counsel for the government objects, etc.) Mr. Williams: We want to prove that Mrs. Liston told her in referring to previous trouble that 'Martin said that you had treated me wrong, and that if I didn't whip you that he will whip me, and he will attend to your father and husband, he will attend to them.' And then I propose to show that she went and told her father about this before this difficulty occurred. Of course, it is necessary to prove what she stated to her so she could tell it before it would be intelligible. The court would hold that anything in the way of a threat that comes to the defendant, whether the deceased made this statement or not, is admissible. The Court: The question is: If it has been told the defendant that he did make this statement, why I would hold that would be admissible. Now, the question, I think, is a very close one, but when the wife says to the witness that her husband says he is going to do so and so, and that is repeated to the defendant, why that would be admissible, and I will admit it, admit the statement of what the husband said as communicated to the defendant. I think it is very doubtful under strict rule, but I would rather make a mistake in letting in too much evidence than to exclude too much. I don't want, though, Mr. Williams, to go over all this previous trouble. Q. Now, Mrs. Mahoney, if Mrs. Liston ever made any statement to you as to what Mr. Liston said he would do to your father, and you afterwards told your father about it, tell the jury. Tell what Mrs. Liston told you, if she told you anything, that Mr. Liston said he would do to your father; that is, if you afterwards told your father before this difficulty occurred. A. In our conversation she told me that Martin said, if she didn't whip me, he would whip her, and then he would settle it with the men folks, and I told father, about it. And then on Saturday afternoon before he was killed on Tuesday he went down where Frank was, and then came back and jumped up in the wagon where his son was, and says, 'God

damn them, I'll kill both of them.' Q. Did you tell your father about it before this killing? A. Yes, sir; I told father, and told my husband that night." Appellant bases his first assignment of error upon this refusal of the court; but, if such refusal was error, it was afterwards corrected by the court and the testimony admitted and was before the jury without dispute.

The second and third assignments of error are based upon the refusal of the court to give certain instructions to the jury requested by the appellant. The substance of both of these requests were in the general instructions given by the court; and refusing to restate them in the words of the appellant is not error.

The fourth assignment of error is an exception to the court's charging the jury as follows, in the definition of malice aforethought: "If the thought came to the mind 'I will kill,' and he did kill immediately after that, that is thought of beforehand; that is malice aforethought." If this were all of the court's instruction, possibly the contention of appellant that it was not a correct statement of law, in that it eliminates the right of self-defense or mitigation, and arbitrarily made appellant's guilt depend upon whether he intended to kill without regard to the circumstances then surrounding appellant or the motive which prompted the intention to kill, may be maintained, but the court in the whole of this instruction was defining murder, and as an element of murder was defining malice aforethought. He first states in the instruction that: "Malice aforethought means in law that it has been thought of beforehand. So, to constitute murder, the evidence must show that the defendant thought of it beforehand, but, as to the time, it is immaterial whether it was thought of an hour beforehand, or a day beforehand, or a minute beforehand. If the thought came to the mind 'I will kill,' and he did kill immediately after that, that is thought of beforehand; that is malice aforethought."

We do not think that this was error. The court in this instruction only told the jury what was the fact, and that before there was murder there must be malice aforethought, by which was meant thought before the act. There must have been in the mind of the defendant the intention to take life, otherwise it would not be murder, because for some perceptible time the killing must have been intended and been in the mind of defendant. The court then gave a comprehensive instruction as to the right of self-defense as follows: "The defendant in this case admits the killing, but says that it was under such circumstances, as, under the law, he was justifiable, justifiable under the law of self-defense. Justifiable homicide is the killing of a human being in necessary self-defense. You see, gentlemen of the jury, the statute defines justifiable homicide as the killing of a human being in necessary self-defense. In ordinary cases of one person killing another in self-defense, it must appear that the danger was so urgent and pressing that, in order to save his own life or prevent his receiving great bodily injury, the killing of the other was necessary, and it must appear also that the person killed was the assailant, and that the slayer had really and in good faith declined any further contest, after the mortal blow or injury was given. Now, gentlemen, if you find from the evidence in this case that the defendant, being armed, and bad feeling existing between the deceased and the defendant, met at the tank or went to the tank, and that the defendant shot and killed the deceased, when it was not necessary in self-defense to save his own life or to protect himself from receiving great bodily injury; that he as a reasonable person didn't believe that the danger was apparent there; that he didn't as a reasonable person believe that the danger was then hanging over him and impending and that it was necessary for him to slay to prevent him receiving great bodily injury or being killed himself—then the defendant is not justifiable. If, however, the defendant believed that his life was

in danger at that time, or the danger was to him impending, and as a reasonable person he believed that he would be killed if he didn't slay the deceased, or that he would receive great bodily injury, that what he did was to prevent receiving great bodily injury or being slain, then that would be self-defense."

The fifth assignment of error is that the court erred in charging the jury as follows: "The deceased would have to be near enough and would have to be doing something toward the injury of defendant to justify the defendant in taking his life. The lawbooks say that a man has the right of self-defense, but it must be necessary self-defense. I would not be authorized to shoot you because I believed you had a knife in your pocket. The defendant would not have the right to slay the deceased because he thought deceased had a knife in his pocket, because the danger must be imminent." This charge of the court that the deceased would have to be near enough and would have to be doing something toward the injury of defendant to justify the defendant in taking his life certainly states the law, and the latter clause, that the defendant "would not have the right to slay deceased because he thought deceased had a knife in his pocket, because the injury must be imminent," also states the law. If the deceased was not doing something toward the injury of the defendant certainly, defendant could not complain that he was in danger, and defendant certainly would not have the right to slay deceased because he thought he had a knife in his pocket. The instructions of the court must be considered as a whole. A detached sentence may by itself be erroneous, but, taken in connection with other parts to which it is allied, may correctly state the law. And, considering these instructions in that view, we must hold that they correctly stated the law.

Finding no error in the record, the judgment of the lower court is affirmed.

CLAYTON, TOWNSEND, and LAWRENCE, JJ., concur.